IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivan J. Kauffman                :
                                    :
       v.                  :  No. 1553 C.D. 2018
                                      :  SUBMITTED: August 9, 2019
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :
              Appellant      :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: October 9, 2019

Appellant Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) challenges the Court of Common Pleas of Mifflin County's (Trial Court) October 29, 2018 order, through which the Trial Court granted Appellee Ivan J. Kauffman's (Kauffman) appeal of the Department's recall of Kauffman's driver's license on physical health grounds. After careful review, we reverse.

## Facts and Procedural History

On July 13, 2018, Kauffman underwent a medical examination by Dr. Jeffrey A. Gilbert, D.O., from whom Kauffman had been receiving medical care since January 27, 2017. Reproduced Record (R.R.) at 53a. Dr. Gilbert, a specialist in cardiology, completed the examination and then filled out a Department-created form known as a DL-13 Initial Reporting Form (Reporting Form). In that Reporting

Form, Dr. Gilbert stated that Kauffman suffered from cardiovascular disease (specifically, "cardiomyopathy with recurrent syncope")[1] and should "cease driving immediately." *Id.*[2] Dr. Gilbert diagnosed Kauffman as suffering from "cardiomyopathy with recurrent syncope." *Id.* Dr. Gilbert indicates that Kauffman suffered repeated syncope events; however, he does not provide the specific dates of these events. *See id.*

---

[1] Cardiomyopathy is "a typically chronic disorder of heart muscle that may involve hypertrophy and obstructive damage to the heart." Webster's Ninth New Collegiate Dictionary, 207 (1988). Syncope is a "brief loss of consciousness associated with transient cerebral anemia, as in heart block, sudden lowering of the blood pressure, etc.; fainting." Webster's Encyclopedic Unabridged Dictionary of the English Language, 1442 (1989).

[2] Dr. Gilbert's report was required by virtue of several sections of the Vehicle Code, as well as the Department's administrative regulations. Section 1518(a) of the Vehicle Code tasks the Department's Medical Advisory Board with "defin[ing] disorders characterized by lapses of consciousness or other mental or physical disabilities affecting the ability of a person to drive safely for the purpose of the reports required by this section." 75 Pa. C.S. § 1518(a). Such reports are required by Section 1518(b) of the Vehicle Code, which mandates that "[a]ll physicians, podiatrists, chiropractors, physician assistants, certified registered nurse practitioners and other persons authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to the [D]epartment, in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days." 75 Pa. C.S. § 1518(b). Among the specific disorders identified by the Medical Advisory Board as automatically disqualifying an individual from being licensed to operate a motor vehicle is "[c]erebral vascular insufficiency or cardiovascular disease which, within the preceding 6 months, has resulted in . . . (i) Syncopal attack or loss of consciousness." 67 Pa. Code § 83.5(a)(3); *accord* 67 Pa. Code § 83.5(b)(4) (mandating disqualification if a licensee has suffered "[c]erebral vascular insufficiency or cardiovascular disease which, within the preceding 6 months, has resulted in lack of coordination, confusion, loss of awareness, dyspnea upon mild exertion or any other sign or symptom which impairs the ability to control and safely perform motor functions necessary to operate a motor vehicle" and a medical provider believes "the condition is likely to impair the [licensee's] ability to control and safely operate a motor vehicle[.]" Neither the Vehicle Code or the regulations define the medical terms used in either 67 Pa. Code § 83.5(a)(3) or 67 Pa. Code § 83.5(b)(4), so we may discern their meanings via common usage, as articulated in a dictionary. 1 Pa. C.S. § 1903(a); *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 343 (Pa. Cmwlth. 2014).

On July 28, 2018, after receiving a copy of the Reporting Form from Dr. Gilbert, the Department notified Kauffman that it was recalling his driver's license effective August 4, 2018, pursuant to Section 1519(c) of the Vehicle Code, 75 Pa. C.S. § 1519(c),[3] due to the medical issues diagnosed by Dr. Gilbert. *Id.* at 51a. In addition, the Department informed Kauffman that this recall was indefinite in duration and would last until he could establish that he was physically fit enough to drive safely. *Id.* The Department did not order Kauffman to sit for any additional medical examinations, but did state that he could submit "updated information from [his] healthcare provider" in the event Kauffman believed the Department's information was inaccurate. *Id.*

On August 9, 2018, Dr. Lowell Stoltzfus, M.D., a practitioner in family medicine, completed two Department-created forms on behalf of Kauffman: a DL-120 Cardiovascular Form and a DL-129 Loss of Consciousness and/or Awareness Form. *Id.* at 47a-48a. On these forms, Dr. Stoltzfus stated that Kauffman had been

---

[3] Section 1519(c) reads as follows:

Recall or suspension of operating privilege.--The [D]epartment shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle. The department shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in section 1550. The judicial review shall be limited to whether the person is competent to drive in accordance with the provisions of the regulations promulgated under section 1517 (relating to Medical Advisory Board).

75 Pa. C.S. § 1519(c).

his patient for one year and had been diagnosed as suffering from cardiovascular disease (specifically atrial fibrillation,[4] cardiomyopathy, congestive heart failure, global hypokinesis[5] with an "EF," *i.e.*, ejection fraction,[6] of 27%) and had suffered a heart attack in 2012. *Id.* at 48a. In addition, Dr. Stoltzfus noted that Kauffman's congestive heart failure caused him to become tired and winded while exerting himself, such as when walking a distance of 200 yards. *Id.* at 47a. According to Dr. Stoltzfus, *this shortness of breath rendered Kauffman unsafe to drive*. *Id.*[7] Dr. Stoltzfus also mentioned that Kauffman had suffered one syncopal attack and loss of consciousness on May 28, 2018, when he fainted on a hot day, but it was unclear what had caused this episode or whether it impaired Kauffman's ability to operate a motor vehicle. *Id.* at 47a-48a. Finally, Dr. Stoltzfus remarked that the medications

---

[4] "Atrial fibrillation . . . is a quivering or irregular heartbeat . . . that can lead to blood clots, stroke, heart failure and other heart-related complications." *What is Atrial Fibrillation (AFib or AF)?*, AMERICAN HEART ASSOCIATION, https://www.heart.org/en/health-topics/atrial-fibrillation/what-is-atrial-fibrillation-afib-or-af (last visited October 8, 2019).

[5] Hypokinesis, also known as hypokinesia, is "an abnormally diminished motor function or mobility." Webster's Encyclopedic Unabridged Dictionary of the English Language, 701 (1989).

[6] "Ejection fraction . . . is a measurement, expressed as a percentage, of how much blood the [heart's] left ventricle pumps out with each contraction. [For example, an] ejection fraction of 60 percent means that 60 percent of the total amount of blood in the left ventricle is pushed out with each heartbeat." *Ejection Fraction Heart Failure Measurement*, AMERICAN HEART ASSOCIATION, https://www.heart.org/en/health-topics/heart-failure/diagnosing-heart-failure/ejection-fraction-heart-failure-measurement (last visited October 8, 2019).

[7] On the DL-120 Cardiovascular Form, which Dr. Stoltzfus filled out for Kauffman, one of the questions is: "Has the patient had any symptoms which would make him/her unsafe to drive?" R.R. at 47a. One of the subheadings under that question reads: "Dyspnea upon mild exertion." *Id.* There is a blank next to the dyspnea subheading which says: "Date of last episode." *Id.* Instead of providing a date, Dr. Stoltzfus wrote, "[s]hort of breath with walking 200 yards." *Id.*

that Kauffman was taking for his medical conditions did not affect his driving skills. *Id.*

Kauffman appealed the Department's recall of license to the Trial Court on August 10, 2018. *Id.* at 2a-10a. The Trial Court held a *de novo* hearing[8] on October 24, 2018. At the hearing, Kauffman and his son, Dave, testified regarding Kauffman's health and his interactions with Dr. Gilbert and Dr. Stolzfus. Neither doctor appeared at this hearing and, accordingly, proof of their professional opinions as to Kauffman's physical health was drawn solely from the aforementioned forms submitted by the doctors. *See* Notes of Testimony (N.T.), 10/24/18, at 3-19, 22-23. On October 29, 2018, the Trial Court granted Kauffman's appeal and ordered that the recall be rescinded. Tr. Ct. Or., 10/29/18, at 1. In its opinion, the Trial Court found that although the Department had made a *prima facie* case via Dr. Gilbert that Kauffman's license should be recalled due to his cardiovascular issues, Kauffman had successfully rebutted Dr. Gilbert's report through the forms filled out by Dr. Stoltzfus. Tr. Ct. Op., 1/2/19, at 1-2. Consequently, the Trial Court held that "the Department failed to show by a preponderance of the evidence that . . . Kauffman was incompetent to drive." *Id.* at 2. On November 26, 2018, the Department appealed the Trial Court's decision to our Court.

## Appeal Issues

On appeal,[9] the Department argues that the Trial Court erred by granting Kauffman's appeal, despite the fact Kauffman did not provide evidence from a

---

[8] "Pursuant to 75 Pa. C.S. § 1550(c), the trial court is authorized to conduct a *de novo* review in a medical recall proceeding." *Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 158 (Pa. Cmwlth. 2014).

[9] Our standard of review in this matter is limited to determining whether the Trial Court abused its discretion, committed an error of law, or made findings of fact that were not supported

qualified medical specialist (which would have been a cardiologist in this case) that he was competent to drive. Department's Br. at 12-18. The Department further maintains that a family physician, such as Dr. Stoltzfus, does not have the requisite level of knowledge or training necessary to properly render a valid medical opinion as to whether Kauffman's driving skills were affected by his heart ailments. *Id.* at 18-19.[10]

## **Analysis**

As already noted, Section 1518(b) of the Vehicle Code states:

> All physicians, podiatrists, chiropractors, physician assistants, certified registered nurse practitioners and other persons authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to the [D]epartment, in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days.

75 Pa. C.S. § 1518(b). Thus, the Vehicle Code's reporting requirements effectively apply to all medical personnel that are capable of making diagnostic determinations. Section 1519(a) of the Vehicle Code states:

> The [D]epartment, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may require the applicant or driver to undergo one or more of the examinations authorized under this subchapter in order to determine the competency of the person to drive. The [D]epartment may require the person to be examined by a physician, a certified registered nurse practitioner, a physician assistant or a licensed psychologist designated by the [D]epartment or may require the person to undergo an examination by a

---

by substantial evidence. *Turk v. Dep't of Transp.*, *Bureau of Driver Licensing*, 983 A.2d 805, 811 n.6 (Pa. Cmwlth. 2009).

[10] Kauffman failed to file a proper and timely appellate brief and has consequently been precluded from filing a brief in this matter. *See* Commonwealth Court Or., 8/2/19, at 1.

6

physician, a certified registered nurse practitioner, a physician assistant or a licensed psychologist of the person's choice. **If the [D]epartment designates the physician, a certified registered nurse practitioner, a physician assistant or licensed psychologist, the licensed driver or applicant may, in addition**, cause a written report to be forwarded to the [D]epartment by a physician, a certified registered nurse practitioner, a physician assistant or a licensed psychologist of the driver's or applicant's choice. Vision qualifications may be determined by an optometrist or ophthalmologist. The [D]epartment shall appoint one or more qualified persons who shall consider all medical reports and testimony in order to determine the competency of the driver or the applicant to drive.

*Id.*, § 1519(a) (emphasis added).

Section 1519(a)-(b) of the Vehicle Code thus unambiguously governs examinations of licensees whom the Department believes may no longer be competent to drive. However, this section is silent as to the type of rebuttal evidence a licensee must provide to the Department in a situation such as Kauffman's, where all of the medical evidence was supplied by doctors of his own choosing. Furthermore, in light of the *de novo* standard of review established by 75 Pa. C.S. § 1550(c), "[t]he trial court is the ultimate finder of fact. . . . [and has] discretion to make credibility and persuasiveness determinations." *Helwig*, 99 A.3d at 158 (internal citation omitted).

Reading these statutory provisions together,[11] it is clear that the General Assembly created a process by which any active medical professional is required to promptly report competency concerns to the Department. The Department may use such reported information as the basis for initiating a license recall. If a licensee

---

[11] *See* 1 Pa. C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.").

7

appeals a recall, a trial court has broad latitude to weigh evidence and decide witness credibility.

Therefore, we are not convinced by the Department's assertion that Kauffman was required to supply the medical opinion of a cardiologist in order to rebut the Department's *prima facie* allegations of incompetency. Indeed, it would be illogical for us to mandate that a licensee can only regain their driving privileges through the word of a medical specialist, when the Vehicle Code permits the Department to recall a license based upon concerns voiced by effectively any competent medical professional. *See Get Set Org. v. Phila. Fed'n of Teachers, Local No. 3*, 286 A.2d 633, 636 (Pa. 1971) ("To give an unreasonable or absurd construction violates the fundamental rules of statutory interpretation.").

The Department also suggests that mandating examination by a specialist would be compatible with its administrative regulations, analogizing it to the Department's requirements regarding medical assessment of licensees who suffer from visual impairment. Department's Br. at 17-18. This argument, however, does not stand up to scrutiny. The relevant Department regulations do not address, in general, whether an affected licensee must be given a clean bill of health by a qualified specialist in order to neutralize a recall action. *See* 67 Pa. Code §§ 82.2-82.6, 83.3-83.6. In addition, and in contrast to other categories of ailments, the General Assembly has expressly declared that "[v]ision qualifications may be determined by an optometrist or ophthalmologist." 75 Pa. C.S. § 1519(c). Furthermore, even with regard to vision assessments, the Department mandates examination by a licensed optometrist or ophthalmologist in some instances, while allowing for examination by licensed physicians using proper equipment in others. *See* 67 Pa. Code § 83.3.

8

However, we do find that the Trial Court erred by granting Kauffman's appeal despite uncontroverted evidence that Kauffman had suffered a syncopal attack on May 28, 2018. To reiterate, the Department's administrative regulations state, in relevant part:

(a) *General disqualifications*. A person who has any of the following conditions will not be qualified to drive:

. . . .

(3) Cerebral vascular insufficiency or cardiovascular disease which, **within the preceding 6 months**, has resulted in one or more of the following:

(i) Syncopal attack or loss of consciousness.

. . . .

(b) *Disqualification on provider's recommendation*. A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the condition is likely to impair the ability to control and safely operate a motor vehicle:

. . . .

4) Cerebral vascular insufficiency or cardiovascular disease which, within the preceding 6 months, has resulted in lack of coordination, confusion, loss of awareness, dyspnea upon mild exertion or any other sign or symptom which impairs the ability to control and safely perform motor functions necessary to operate a motor vehicle.

67 Pa. Code § 83.5 (some emphasis added).

Given the date of this attack, May 28, 2018, the Trial Court's October 24, 2018 hearing fell within the six-month disqualification window. Thus, the Trial Court was mandated to affirm the Department's decision to recall Kauffman's license. Moreover, the Trial Court was not provided with medical evidence that would support a conclusion that Kauffman was fit to operate a motor vehicle. **Both Dr. Gilbert and Dr. Stoltzfus concluded that Kauffman's medical conditions impaired his driving abilities.** The Trial Court's decision to grant Kauffman's appeal

9

and return his license thus ignored the plain letter of the law. Therefore, as the record medical evidence indisputably confirmed that Kauffman's heart problems pose a serious danger to both himself and other drivers, we reverse the Trial Court's October 29, 2018 order granting Kauffman's appeal.[12]

_____
ELLEN CEISLER, Judge

---

[12] The Department also maintains that ruling in its favor will not affect Kauffman's ability to retain his license, as more than six months have passed since his May 28, 2018 syncopal attack. Department's Br. at 19 n.8. This contention, however, is incorrect. The Vehicle Code mandates, in relevant part, that a "[license] recall shall be for an indefinite period until satisfactory evidence is presented to the [D]epartment in accordance with regulations to establish that [the affected] person is competent to drive a motor vehicle." 75 Pa. C.S. § 1519(c). In addition, the Department's own administrative regulations establish that restoration is not an automatic process, but will occur only "[w]hen a physician provides clear information indicating that the [affected] person does meet the medical regulations for safe driving[.]" 67 Pa. Code § 82.4(a). Thus, Kauffman's license will remain recalled until he submits such information and the Department affirmatively elects to restore his privilege.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivan J. Kauffman          :
                                   :
      v.               :   No. 1553 C.D. 2018
                                   :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
              Appellant   :

# **O R D E R**

AND NOW, this 9th day of October, 2019, the Court of Common Pleas of Mifflin County's October 29, 2018 order, which granted Appellee Ivan J. Kauffman's (Kauffman) appeal of the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's recall of Kauffman's driver's license, is REVERSED.

_____
ELLEN CEISLER, Judge